IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- x
ANAT GORDON,                                                   :
on behalf of Plaintiff and a class,                            :
                                                               :
                Plaintiff,                                     :
                                                               :   20-cv-3792
        vs.                                                    :
                                                               :
UNITED STATES FIRE INSURANCE                                   :
COMPANY,                                                       :
                                                               :
                Defendant.                                     :
-------------------------------------------------------------- x
```

## COMPLAINT – CLASS ACTION

1.  Plaintiff Anat Gordon brings this action to secure redress for the improper denial of quarantine benefits under travel insurance policies.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. 1332(d), in that (a) the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, (b) there are more than 100 members of the class, (c) Plaintiff and Defendant are of diverse citizenship.

3.  Venue in this District is proper because a material part of the events at issue occurred here.

4.  This Court has personal jurisdiction over Defendant because it issued a policy of insurance to a resident of New York and this District.

## PARTIES

5.  Plaintiff Anat Gordon is a resident of Roslyn, Nassau County, New York.

She is a citizen of New York.

6. Defendant United States Fire Insurance Company is a corporation organized under Delaware law with its principal places of business at 5 Christopher Way, Eatontown, NJ 07724, and 305 Madison Avenue, Morristown, NJ 07960. It is part of the Crum & Forster group of companies. It is authorized to transact insurance business in all states and the District of Columbia.

7. Defendant United States Fire Insurance Company underwrites travel and trip and event cancellation insurance.

## FACTS

8. Plaintiff Anat Gordon is the parent of minor son M Gordon.

9. Plaintiff contracted to send her son M to overnight summer camp at Camp Lenox in Otis, Massachusetts, during the period June 27, 2020 to August 15, 2020, at a cost of $11,800, which was prepaid. The camp is generally attended by several hundred children.

10. To protect against loss, Plaintiff purchased an "A+ Program Protection Plan" with an effective date of July 26, 2019.

11. The "A+ Program Protection Plan" is a policy of travel, trip or event insurance underwritten by Defendant United States Fire Insurance Company.

12. A copy of the policy is attached as Appendix A. A copy of the Purchase Confirmation is attached as Appendix B.

13. Plaintiff paid the premium required for the coverage and the policy was in full force and effect at the time of the events described below.

14. Both Appendix A and Appendix B are standard form documents.

15. Appendix A stated that "Benefits will be paid, up to the Maximum Benefit Amount shown in the Confirmation of Benefits, to cover You for the unused non-refundable prepaid expenses for Program Arrangements when You are prevented from taking Your Trip due to . . . the Other Covered Reasons listed below; provided such circumstances occurred after Your Effective Date."

16. The "Other Covered Reasons" included "You or Your Traveling Companion being . . . quarantined . . ."

17. "Quarantined" is not defined in the policy.

18. The common meaning of "quarantine" is "a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests" and "a state of enforced isolation." (https://www.merriam-webster.com/dictionary/quarantined?src=search-dict-hed)

19. On January 30, 2020, the World Health Organization declared COVID-19 a "Global Health Emergency;" a "Public Health Emergency of International Concern."

20. On January 31, 2020, the President declared COVID-19 a public health emergency.

21. On February 21, 2020, Dr. Nancy Messonnier, director of the CDC's National Center for Immunization and Respiratory Diseases, told reporters that U.S. health officials were preparing for the coronavirus to become a pandemic.

22. On February 29, 2020, the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks.

23. Following these prounouncements, the Commonwealth of Massachusetts issued

orders which prohibited the summer camp Plaintiff planned to have her son attend.

24.     On March 10, 2020, the Commonwealth of Massachusetts declared that the COVID-19 outbreak was "a disaster that impacts the health, security, and safety of the public" and announced a state of emergency.

25.     On March 23, 2020, the Commonwealth of Massachusetts issued COVID-19 Order No. 13, which closed all businesses other than those providing essential services, prohibited indoor gatherings of more than 10 people, and prohibited all recreational and athletic activities, regardless of size, that brought persons into close physical contact.  A summer camp is not "essential."

26.     On March 31, 2020, Massachusetts issued COVID-19 Order No. 21, extending the prohibition until May 4, 2020.

27.     On April 28, 2020, Massachusetts issued COVID-19 Order No. 30, extending the prohibition until May 18, 2020.

28.     On May 8, 2020 and June 6, 2020, Massachusetts issued COVID-19 orders Nos. 33, 37 and 38, providing for the phased reopening of certain businesses, but not permitting a summer camp starting June 27, 2020.

29.     Similar orders were issued by the State of New York.

30.     On March 7, 2020, the State of New York declared itself to be a disaster area as a result of the COVID-19 pandemic, by Executive Order 202.

31.     On March 12, 2020, by Executive Order 202.1, the State of New York ordered that "Any large gathering or event for which attendance is anticipated to be in excess of five hundred people shall be cancelled or postponed for a minimum of thirty days" and "Any place of

business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, shall operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days effective on Friday, March 13, 2020, except that any theater seating five hundred or more attendees for a live performance located in a city of one million or more shall not hold any further performances after 5pm on March 12, 2020."

32. On March 16, 2020, by Executive Order 202.3, the State of New York ordered that "The directive requiring large gatherings and events to be cancelled or postponed if they had anticipated attendance in excess of 500 people by virtue of Executive Order 202.1 dated March 12, 2020, is hereby amended and modified to require that any large gathering or event (concert, conference, worship service, performance before a large audience, etc.) shall be cancelled or postponed if more than fifty persons are expected in attendance, at any location in New York State until further notice."

33. On March 18, 2020, by Executive Order 202.5, the State of New York ordered that "all places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions shall likewise be closed to the public at 8 p.m. on March 19.  This directive shall not apply to public parks and open recreation areas."

34. On March 19, 2020, by Executive Order 202.7, the State of New York ordered that "Effective March 21, 2020 at 8 p.m. and until further notice all businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work

from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 75% no later than March 21 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions."

35. On March 20, 2020, by Executive Order 202.8, the State of New York ordered that "Effective on March 22 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function. Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law."

36. On March 29, 2020, by Executive Order 202.13, the State of New York ordered that "By virtue of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11 which closed or otherwise restricted public or private businesses or places of public accommodation, all such Executive Orders shall be continued, provided that the expiration dates of such Executive Orders shall be aligned, such that all in-person business restrictions will be effective until 11:59 p.m. on April 15, 2020, unless later extended by future Executive Orders."

37. On April 16, 2020, by Executive Order 202.18, the State of New York ordered

that "Executive Order 202.14, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, and 202.13 which each closed or otherwise restricted public or private businesses or places of public accommodation, and which required postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events), is hereby continued, provided that the expiration date of such provisions of such Executive Orders shall be aligned, such that all in-person business restrictions and workplace restrictions will be effective until 11:59 p.m. on May 15, 2020, unless later extended by a future Executive Order. All enforcement mechanisms by state or local governments shall continue to be in full force and effect until May 15, 2020 unless later extended by a future Executive Order."

38. On May 14, 2020, by Executive Order 202.31, the State of New York ordered that "Executive Order 202.28, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, and 202.14 which each closed or otherwise restricted public or private businesses or places of public accommodation, and which required postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events), which together constitute New York On PAUSE, is hereby continued until 11:59 p.m. on May 28, 2020, unless later amended or extended by a future Executive Order".

39. On May 28, 2020, by Executive Order 202.34, the State of New York ordered that "Executive Order 202.31, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, 202.14, 202.28 which each closed or otherwise restricted public or private businesses or places of public accommodation, and

Executive Order 202.32 as modified by Executive Order 202.33 which required postponement, cancellation, or restriction on size of all non-essential gatherings of more than ten individuals, and which together constitute New York On PAUSE, is hereby continued until and unless later amended or extended by a future Executive Order," with provision for gradual reopening by business and region.

40. Similar orders was issued by other states.

41. In order to comply with these and other official orders, the summer camp to be attended by M Gordon was cancelled. Plaintiff was orally notified, followed by the document attached as Appendix C.

42. Plaintiff was reimbursed $6,000 of the amount she paid the camp by the camp operator. The camp has not indicated whether it can or will reimburse anything further.

43. The cancellation of events by official order issued for the purpose of curbing the spread of contagious disease at such events is a "quarantine" applicable to Plaintiff's son and others who would attend such events.

44. Plaintiff made a claim under the policy.

45. Defendant denied the claim. On July 31, 2020, Plaintiff received a message stating that the claim was determined not payable (Appendix D).

46. No formal reason for denial was provided.

47. The denial of the claim was wrongful. Defendant should have paid the claim and obtained any available recourse from the camp.

48. Upon information and belief, Defendant has categorically issued denials to every claim arising during the COVID-19 pandemic.

## **CLASS ALLEGATIONS**

49.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

50.     The class consists of (a) all persons located within the United States that purchased travel or trip or event cancellation insurance underwritten by United States Fire Insurance Company (b) prior to March 1, 2020, (c) which insurance referred to "quarantine" as a covered event (d) and were prevented from taking a trip or attending an event by governmental orders issued pursuant to the COVID-19 pandemic, including orders requiring cancellation of travel or events, (e) and who have not been completely reimbursed for amounts paid.

51.     Excluded from the class are Defendant and its affiliated entities, the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

52.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

53.     On information and belief, the class is so numerous that joinder of all members is not practicable.

54.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

        a.     Whether the orders issued as a result of the COVID-19 pandemic impose a "quarantine."

      b.     Whether Defendant refused to provide coverage.

55.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

56.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

57.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights;

## COUNT I – BREACH OF CONTRACT

58.    Plaintiff incorporates paragraphs 1-57.

59.    Defendant breached its insurance policies with Plaintiff and the class members.

60.    As a result, Plaintiff and each class member sustained damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.     A declaration that Defendant is obligated to pay for COVID-19 related losses;

      ii.     Compensatory damages;

      iii.     Costs of suit;

      iv.     Such other or further relief as the Court deems proper.

<u>*/s/ Tiffany N. Hardy*</u>
Tiffany N. Hardy

Tiffany N. Hardy
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com


Adam J. Fishbein
735 Central Avenue
Woodmere, New York 11598
(516) 668-6945
fishbeinadamj@gmail.com>


T:\37178\Pleading\Complaint - revised_Pleading.WPD

-11-